UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY JACOBSON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:21-cv-00756-CDB<br><br>OPINION AND ORDER AFFIRMING THE COMMISSIONER [1]<br><br>(Docs. 16, 18) |

Randy Jacobson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 16 and 18). For the reasons stated, the Court affirms the Commissioner's decision.

## I.    BACKGROUND

**A. Introduction**

In September 2018, Plaintiff filed applications for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for Supplemental

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc 11).

1  Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging a period of disability

2  beginning on January 1, 2017.  (Administrative Record ("AR") 49, 72-73, 242-54).    Plaintiff

3  was born on February 12, 1973, and was 43 years old on the alleged disability onset date.  *See*

4  *generally* (AR).  Plaintiff claims disability due to a broken back, three separate head injuries,

5  arthritis, degenerative disc disease, sciatica, hypertension, a fractured pelvis, and bladder issues.

6  (AR 90, 105).  Plaintiff alleges his disability is based on injuries he sustained at the age of 5, 8,

7  and 28.  (AR 48).

## B. Relevant Medical Evidence[2]

9  From August 9, 2017, to April 19, 2018, Plaintiff went to Sansum Clinic in Santa Barbara,

10  California primarily for head injury and chronic pain in his sacrum, hips, and lower back.  (AR

11  342-73).  Plaintiff was seen by Dr. Karen Hord, Dr. Daniel J. Curhan, Physician Assistant ("PA")

12  Matthew James Ebling, PA Jamie Teresa Duncan, and PA Martin C. Bean.  *Id*.  Sansum Clinic

13  medical staff attempted to manage his pain by prescribing medicine.  *Id*.  Medical staff

14  determined Plaintiff was "independent in [Activities of Daily Living ("ADLs")] but forgets

15  medication and seems to have a sundown effect with irritability and increased dysfunction in late

16  afternoon."  (AR 346, 348, 352, 355, 357).  Sansum Clinic medical staff also found Plaintiff's

17  pain could be aggravated through walking and prolonged activities and could be managed through

18  medication, stretching, and physical therapy.  (AR 348, 352, 355, 357, 359).

19  From February 15, 2018, to December 19, 2018, Plaintiff went to Pacific Pain Physicians

20  in Santa Barbara, California for pelvic and sacral pain.  (AR 374-426).  Plaintiff was seen by Dr.

21  David Pires, Dr. R. Michael Hullander, Physician Assistant-Certified ("PA-C") Barbara Irish,

22  PA-C Gregory Stevens, and PA-C Jamie T. Duncan.  *Id*.

23  PA-C Irish found Plaintiff has "significant pain while driving, prolonged sitting,

24  prolonged standings and walking."  (AR 420).  PA-C Irish noted Plaintiff has limitations that

25  significantly limit his ability to work full-time and is working as much as he can intermittently

26  but is unable to tolerate a 40-hour-per-week work schedule.  *Id*.  PA-C Irish found Plaintiff has

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

had three significant brain injuries and "he is independent in ADLs but forgets his medication." (AR 375, 387, 390, 393, 399, 402, 407, 416, 420-21).  PA-C Irish found Plaintiff's pain could be aggravated through walking and prolonged activities and could be relieved through stretching and physical therapy. *Id*.

On January 9, 2019, Dr. Birgit Siekerkotte conducted a "comprehensive internal medicine evaluation" of Plaintiff.  (AR 461).  Dr. Siekerkotte reviewed Plaintiff's medical history and activities of daily living.  (AR 461-62).  Dr. Siekerkotte found despite Plaintiff's past injuries and current condition, Plaintiff had no functional limitations in standing, walking, sitting, climbing, balancing, stooping, kneeling, crouching, crawling, and manipulative activities.  (AR 464).  Moreover, Dr. Siekerkotte noted Plaintiff needed no assistive devices and could lift 50 pounds occasionally and 25 pounds frequently with proper technique.  *Id*.  Dr. Siekerkotte concluded Plaintiff had no workplace and environmental activities limitations.  (AR 465).

On February 22, 2019, state agency medical consultant, Dr. P. Frye, performed a medical evaluation of Plaintiff at the request of the Commissioner.  (AR 79-86, 89-103).  Dr. Frye found Plaintiff's claim of disability due to pain was not fully substantiated by the medical and non-medical evidence in the file.  (AR 82, 99).  Dr. Frye determined Plaintiff's medical condition could result in some limitations in his ability to perform work-related activities.  (AR 86).  However, Dr. Frye found Plaintiff's condition was not severe enough to keep him from working.  *Id*.  Instead, Dr. Frye found Plaintiff could perform "medium work," providing only restrictions on climbing ladders/ropes/scaffolds, and to "avoid even moderate exposure" to "[h]azzards (machinery, heights, etc.)."  (AR 79, 83-84).

That same day, Dr. Peter Bradley, a state agency psychological consultant, reviewed Plaintiff's medical history and testimony related to his mental impairment.  (AR 80).  Dr. Bradley recommended, "given third party report of significant dysfunction and three [traumatic brain injuries] and increased dependence, we should procure a psychometric evaluation [with a Wechsler Adult Intelligence Scale 4th Edition, Wechsler Memory Scale 4th Edition], and Trials AB."  *Id*.

///

On March 4, 2019, psychological consultative examiner ("CE") Dr. Megan Williamson, evaluated Plaintiff at the request of the Commissioner. (AR 467-76). Dr. Williamson administered both Wechsler tests as recommended by Dr. Bradley. (AR. 469). Dr. Williamson noted Plaintiff "appears to have an unspecified cognitive impairment due to a medical condition" stemming from "a head injury at 9 years old and a motorcycle accident in 2001." (AR 474-75). Dr. Williamson determined Plaintiff had memory issues and that "these symptoms appear to cause mild impairments in his day-to-day functioning and ability to maintain employment…" (AR 475).

On April 18, 2019, Dr. Stephen Saxby, another state agency psychological consultant, was tasked to evaluate Plaintiff's mental impairment. (AR 97-98). Dr. Saxby acknowledged Plaintiff had a medically determinable impairment: a spine disorder, and a neurocognitive disorder. (AR 97). Dr. Saxby found Plaintiff's neurocognitive disorder did not interfere with his ability to interact with others, adapt or manage oneself, and engage in "[highly functional]" ADLs. (AR 98). Dr. Saxby noted Plaintiff's disorder mildly limited his ability to understand, remember or apply information, concentrate, persist, or maintain pace. *Id*. Dr. Saxby classified Plaintiff's current condition as "non-severe." *Id*.

On June 12, 2019, state agency medical consultants, Dr. J. Mitchell, and state agency psychological consultants, Dr. Howard Leizer, performed medical evaluations of Plaintiff at the request of the Commissioner. (AR 104-135). Dr. Mitchell and Dr. Leizer's evaluations held Dr. Frye and Dr. Saxby's initial assessments were appropriate. (AR 112). Dr. Mitchell and Dr. Leizer's evaluations largely mirrored Dr. Frye and Dr. Saxby's initial assessments. (AR 114-17) Additionally, Dr. Mitchell acknowledged Plaintiff's condition "imposed some limitations [on his] ability to perform work related activities. However, these limitations do not prevent [Plaintiff] from performing work you have done in the past as a/an real estate, as you described." (AR 118).

From February 14, 2019, to May 1, 2020, Plaintiff went to Clinica Sierra Vista in Bakersfield, California. (AR 529-613). Plaintiff was seen by Nurse Practitioner Tina L. Heinemann, AGACNP. *Id*. Nurse Practitioner Heinemann primarily prescribed Plaintiff medication for his chronic pain and insomnia and referred him to other specialists. *Id*.

From May 28, 2019, to July 11, 2019, Plaintiff went to Kern Valley Health Care District in Lake Isabella, California. (AR 515-28). Plaintiff was seen by Physical Therapist ("PT") James Toffolo and Physical Therapist Assistant Jeff Dale. *Id*. PT Toffolo determined Plaintiff possessed "a lot of biomechanical dysfunctions of pelvis and spine." (AR 517). Despite this "dysfunction," PT Toffolo noted Plaintiff "has done an excellent job of working on his body." *Id*. PT Toffolo proposed a treatment plan for Plaintiff to restore biomechanical function, reduce myofascial strain, and reduce Plaintiff's pain. (AR 517-18). After ten physical therapy sessions, PT Toffolo stated Plaintiff "gained some good insight into movement patterns and development of his home program" but "[h]e will need ongoing PT for the rest of his life." (AR 527).

**C. Administrative Proceedings**

The Commissioner denied Plaintiff's application initially on April 18, 2019, and again on reconsideration on June 12, 2019. (AR 144-50, 153-58). On July 31, 2019, Plaintiff submitted a written request for a hearing. (AR 165-66). On August 17, 2020, counsel for Plaintiff requested the ALJ appoint a CE for a neuropsychological evaluation and tests, to assess and understand Plaintiff's "unspecified cognitive impairment." (AR 335). On August 26, 2020, Plaintiff's mother, JoAnn Jacobson, provided a statement on behalf of Plaintiff. (AR 340-41). Ms. JoAnn Jacobson described Plaintiff's condition and his limitations. (AR 340). Ms. JoAnn Jacobson noted Plaintiff "must perform stretching exercises for 30 to 60 minutes 4 to 5 times a day" daily for his condition. *Id*.

Plaintiff represented by counsel appeared and testified at a telephonic hearing held before Administrative Law Judge Lisa Lunsford (the "ALJ") on August 28, 2020. (AR 39-62, 210-19). Vocational expert ("VE") Bonnie Drumwright, also testified at the hearing. (AR 58-62). At the outset, the ALJ denied Plaintiff's request for neuropsychological testing. (AR 45). The ALJ noted, "Social Security does not have access to more extensive cognitive testing than what was already performed in this case, and the level of impairment…identified…in this case was determined to be mild." *Id*. The ALJ held Plaintiff's neuropsychological condition did not warrant any further testing. *Id*.

///

**D. Hearing Testimony**

Plaintiff testified when he was five years old, he was in a motorcycle accident that fractured his skull and broke his arm. (AR 48). When Plaintiff was nine years old, he fell off a rope swing and fell into a coma for three days. *Id*. Medical staff had to place a "splint into my brain to relieve the swelling cause my brain was swelling." *Id*. Soon after, Plaintiff suffered from seizures until he was in junior high. *Id*.

Plaintiff testified when he was 28 years old, on April 1, 2001, he shattered his pelvis, broke his back, and sustained another head injury damaging his right frontal lobe and the back of his frontal lobe. (AR 48, 51). Plaintiff underwent an operation to reconstruct his pelvis and had to use a back brace and walker for mobility. (AR 49). Plaintiff notes it took him a year to learn how to walk again. *Id*.

Plaintiff testified four years after the 2001 accident, he was still "in so much pain." *Id*. Plaintiff states he did yoga, "Rolfing," learned reiki, and moved to Thailand to learn "Hanna Somatics" to reduce his pain. *Id*. Plaintiff then moved to San Francisco to continue his education in Hanna Somatics and become a massage therapist. (AR 49-50). He asserts these disciplines help him handle his pain and he can't function without practicing these disciplines four to six times a day, with each session lasting "anywhere from like a half hour to 45 minutes." (AR 50).

Plaintiff testified most of his pain is in his sacrum and lower back. *Id*. The pain also shoots down his legs. (AR 50-51). Plaintiff asserted his "pelvis is all metal, so I just have a lot of pain from that." (AR 51). Plaintiff testified his pain prevents him from focusing. *Id*. Plaintiff further testified his pain increase in intensity when he sits or stands "in any one position for very long." (AR 52). Plaintiff also asserted his pain affects his relationship with others as he needs to work on his back. *Id*.

Plaintiff testified prior to the 2001 accident he worked in real estate for his father's company "doing coaching." (AR 53). Plaintiff was learning how to do marketing so he could teach other real estate agents and his father how to sell. (AR 53-54). After the accident, Plaintiff continued to work a couple of hours a week for his father. (AR 46). Plaintiff's job responsibilities included showing potential buyers properties and providing general assistance to

his father. (AR 54-55). When Plaintiff's father sold a property Plaintiff had shown, Plaintiff was provided part of the commission. (AR 56-57). Plaintiff's father retired in either 2016 or 2017 and Plaintiff testified he did some work in 2017. (AR 57-58).

The VE classified Plaintiff's prior work to be sales agent real estate with a Dictionary of Occupational Titles ("DOT") 250.357-018. (AR 59). The VE labeled the specific vocational preparation level at a 5 and found that type of work to be light according to the DOT, light as described in the record, and in testimony. *Id*.

The ALJ proffered a hypothetical of an individual with the same age, education, and work experience as the Plaintiff, who is limited to light work, but has the following additional limitations: can never climb ladders, ropes, or scaffolds, and can have no exposure to hazards such as moving machinery or heights. *Id*. The VE opined that this induvial could not perform Plaintiff's previous work. *Id*. However, this individual could perform unskilled jobs such as cashier two, DOT 211.462-010, SVP 2, physical exertion light, for which there are 574,000 jobs in the nation, marker, DOT 207.587-034, SVP 2, physical exertion light, for which there are 125,000 jobs in the nation, and sales attendant, DOT 299.677-010, SVP 2, physical exertion light, for which there are 283,000 jobs in the nation. (AR 60).

The ALJ proffered a second hypothetical in which the first hypothetical individual would be off-task for 15 percent of a workday due to pain and other symptoms. *Id*. The VE opined that such an induvial would not be competitive for gainful employment. *Id*.

**E. The ALJ's Decision**

On September 18, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-33). The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (AR 22). The ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2017, the alleged onset date (step one). (AR 23). The ALJ held Plaintiff has the following severe impairments: right hip osteoarthritis, lumbar spine degenerative disc disease and compression fractures, small fiber neuropathy, chronic pain syndrome, and a history of seizures (step two). (AR 23-24). The ALJ also noted Plaintiff possessed a neurocognitive disorder. (AR 24). However, the ALJ found this impairment imposed at most a

1    minimal functional limitation on Plaintiff's ability to perform basic mental work activities and
2    was therefore "nonsevere." (AR 24-25).

3    Next, the ALJ determined Plaintiff did not have an impairment or combination of
4    impairments that meets or medically equals the severity of one of the listed impairments in 20
5    C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 25). The ALJ then
6    assessed Plaintiff's residual functional capacity ("RFC"). *See* (AR 23, 25) ("Before considering
7    step four of the sequential evaluation process, the undersigned must first determine the claimant's
8    residual functional capacity") (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)).

9    The ALJ found that Plaintiff retained the RFC "to perform light work as defined in 20
10   C.F.R. [§§] 404.1567(b) and 416.967(b), except he can never climb ladders, ropes or scaffolds,
11   and cannot have exposure to hazards, such as moving machinery or heights." (AR 25). Although
12   the ALJ recognized that Plaintiff's impairments could reasonably be expected to cause his alleged
13   symptoms, the ALJ rejected Plaintiff's statements concerning the intensity, persistence and
14   limiting effects of his symptoms were not entirely consistent with the medical evidence and other
15   evidence in the record. (AR 27). The ALJ held despite Plaintiff's subjective symptoms, he was
16   able to engage in a myriad of activities. (AR 27-28).

17   The ALJ also found Plaintiff had been able to perform substantial gainful activity with his
18   father, since his accident almost 20 years prior. (AR 29). The ALJ determined Plaintiff's
19   certified earnings record documents, and self-employment earnings during those relevant years,
20   were "reasonably consistent with substantial gainful activity." (AR 31). The ALJ held there was
21   "little evidence, such as of business expenses or sheltered employment as argued by the
22   claimant's representative, to establish otherwise." *Id*. Instead, the ALJ found Plaintiff's past
23   work was comparable to that of an unimpaired individual, he had maintained an active real estate
24   agent's license and his earnings were well above the "standard presumptive [substantial gainful
25   activity] levels at times." *Id*. Moreover, the ALJ noted Plaintiff stopped work "at least partially
26   because of the real estate market conditions, and he testified that his work with his father only
27   ended when his father retired, rather than due to functional limitations arising from his alleged
28   disabling impairments." (AR 28).

8

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but that he could perform a significant number of other jobs in the national economy, including cashier II, marker, and sales attendant (step five). (AR 32).

On March 12, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR. 1-7). Plaintiff filed this action on May 10, 2021, seeking judicial review of the denial of his application for benefits. (Doc. 1). The Commissioner lodged the administrative record on March 2, 2022. (Doc. 12). Plaintiff filed an opening brief on April 1, 2022. (Doc. 16). Defendant filed an opposition on May 16, 2022. (Docs. 18). No optional reply brief was filed. The undersigned was reassigned to undertake all further proceedings in this case on October 6, 2022. (Doc. 19). The matter is deemed submitted on the pleadings.

## II.   LEGAL STANDARD

**A. The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii), and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1[4], (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)). The burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

---

[4] Before making the step four determination, the ALJ must determine a claimant's RFC. 20 C.F.R. § 416.920(e); *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). "The RFC is 'the most [one] can still do despite [his or her] limitations' and represents an assessment 'based on all the relevant evidence.'" *Id.* (quoting 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe.").

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   ISSUES

On March 3, 2022, the Court issued a scheduling order in this action directing Plaintiff to provide an opening brief that possessed "a short, separate statement of each of the plaintiff's legal claims stated in terms of the insufficiency of the evidence to support findings of fact or reliance upon an erroneous legal standard." (Doc. 14 at 2). Instead, the Court received from Plaintiff a brief that does not separately break out the legal claims. Therefore, as best as the Court can discern from Plaintiff's opening brief (Doc. 16), Plaintiff is claiming that the ALJ committed reversible error in the following respects:

1. Whether the ALJ had a duty to develop the record further with respect to Plaintiff's "unspecified" neurocognitive impairment. *Id*. at 3-4.
2. Whether the ALJ disregarded Plaintiff's testimony describing his head trauma. *Id*. at 4-5.
3. Whether the ALJ failed to address Plaintiff's testimony regarding his past

employment. *Id*.

4. Whether the ALJ disregarded the opinion of several medical providers that are consistent with Plaintiff's testimony as to his "constant pain." *Id*. at 6.

5. Whether the ALJ failed to take into consideration Plaintiff's need to regularly exercise and how it would preclude him from any work. *Id*. at 6-7.

## IV.     DISCUSSION

Plaintiff contends that the ALJ was obligated to develop the record further with respect to his "unspecified" neurocognitive impairment. (Doc. 16 at 3-4). Specifically, Plaintiff asserts the record was not fully developed as to his cognitive issues and how they interfere with and limit his ability to engage in substantial gainful employment. *Id*. at 4.

The Ninth Circuit holds that an ALJ has a special duty to fully and fairly develop the record and to assure that a claimant's interests are considered, even when the claimant is represented by counsel. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *see Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (this duty is especially important when a claimant suffers from a mental impairment). However, it remains the claimant's "duty to prove" that he is disabled and entitled to benefits. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d at 459-60. This duty may require that the ALJ obtain additional information by, *inter alia*, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a.

First: the ALJ was not obligated to further develop the record with respect to Plaintiff's neurocognitive impairment. The ALJ found Plaintiff underwent a psychological consultative examination with Dr. Williamson in March 2019. (AR 24-25, 28, 467-76). Dr. Williamson's examination of Plaintiff and review of his records led her to conclude Plaintiff's unspecified neurocognitive impairment caused only mild impairment in his overall functioning. (AR 475). Additionally, the ALJ also considered Drs. Saxby and Leizer's evaluations of Plaintiff's

unspecified neurocognitive impairment. (AR 24-25, 30, 97-98, 114-15). Both doctors concluded Plaintiff's neurocognitive impairment imposed mild limitations on his ability to function but could not be classified as a severe impairment. (AR 98, 114). Thus, the record was neither ambiguous nor inadequate to prevent the ALJ to make a proper evaluation of the evidence as to Plaintiff's mental impairment.

Second: Plaintiff's claim the ALJ disregarded his testimony describing his "head trauma" is without merit. (Doc. 16 at 4). The ALJ acknowledged Plaintiff's history of such injury and concluded the overall record did not support Plaintiff's claim that his head trauma was a severe impairment. (AR 24-25, 27-28). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements are not alone conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."). Rather, in deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

Plaintiff has not presented objective medical evidence of an underlying severe mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. As previously stated, Drs. Williamson, Saxby and Leizer found Plaintiff's head trauma, his neurocognitive impairment, was non-severe. (AR 24-25, 27). Plaintiff points to no objective medical evidence within the record that supports his claim and only asserts a claim that "the extent of [his condition] remains unexplored". (Doc. 16 at 4).

*Assuming arguendo* Plaintiff had provided objective medical evidence regarding the severity of his head trauma, the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. The ALJ held Plaintiff was able to live independently. (AR 27). Plaintiff was able to maintain personal care and take medicine without help or reminders, attend medical appointments, prepare meals, do household chores, take care of others, "studied and learned numerous modalities for pain management," maintain a valid driver's license, and active real-estate agent's license. (AR 27-28). The ALJ found Plaintiff did not complain of head trauma-related difficulties with his work. *Id*. Rather, the ALJ noted, "[Plaintiff] stopped working at least partially because of the real estate market conditions, and he testified that his work with his father only ended when his father retired." (AR 28).

Additionally, the ALJ found Plaintiff was able to live with his parents, maintain good relationships and "spend time with others spend time with others by barbecuing and playing with his cousin's children 'throughout the day,' shop in stores, and take his dog to the park, consistent with no difficulties interacting with others." (AR 28). The ALJ also found "[Plaintiff] was able to maintain sufficient focus to drive a car for two hours at a time, engage in hobbies or interests of watching television and playing videogames, use a computer, handle cash appropriately and pay bills, and count change." *Id*.

Plaintiff argues the ALJ improperly considered activities of daily life that do not "involve[e] the performance of physical functions of the claimant's daily activities that are transferable to a work setting" to discount his testimony. (Doc. 16 at 5) (quoting *Orn*, 495 F.3d at 639). Specifically, Plaintiff asserts activities of daily living such as "playing with children, driving a car, watching television, playing video games, personal bathing, dressing, hygiene, household chores, shopping, attending appointments, working out, visiting with friends, taking walking, and taking care of a dog" should not have been considered. (Doc. 16 at 5).

"In general, the Commissioner does not consider 'activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs' to be substantial gainful activities." *Garibay v. Colvin*, No. 2:15-cv-00452 DB, 2017 WL 416134, at *5 (E.D. Cal. Jan. 30, 2017) (quoting 20 C.F.R. § 404.1572(c)). Instead, a claimant's activities of

daily living may discredit his testimony regarding symptoms only when (1) the activities meet the threshold for transferable work skills or (2) the activities contradict his/her testimony. *Orn*, 495 F.3d at 639.

The Court has reviewed the record and finds the ALJ did not improperly consider Plaintiff's daily activities to discount his testimony concerning his head trauma. The ALJ did not discuss Plaintiff's daily activities in a vacuum, but rather, considered Plaintiff's daily activities as further support for medical testimony that described Plaintiff as "[highly functional]." (AR 27-31, 98). The ALJ found Petitioner's wide range of daily activities consistent with medical testimony and contradicted Plaintiff's claims of total disability. (AR 28).

Further, one of Plaintiff's listed activities was working and maintaining his license as a real estate agent. (AR 46, 271-72, 461); *see Jourdan v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 499, 500 (9th Cir. 2011) (unpublished) (claimant's ability to work for ten years after his accident constituted substantial evidence for the ALJ's decision to discount Plaintiff's subjective testimony). Certainly, this activity meets the "threshold for transferable work skills." *Orn*, 495 F.3d at 639.

Third: in considering his ability to perform substantial gainful activity, Plaintiff argues the ALJ failed to consider that his work performance as a real estate agent was "beleaguered" (Doc. 16 at 5). In determining whether work activity constitutes substantial gainful activity, the Social Security Administration's "primary consideration will be earnings [the claimant] derive[s] from the work activity." 20 C.F.R. § 416.974(a)(1). Earnings over the applicable statutory minimum create a presumption of substantial gainful employment. *Katz v. Secretary of Health & Human Services*, 972 F.2d 290, 293 (9th Cir. 1992); *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). However, earnings alone are not dispositive and other factors may rebut the presumption, such as "the time spent working, quality of a [claimant's] performance, special working conditions, and the possibility of self-employment." *Katz*, 972 F.2d at 293.

Regulations describe sheltered work as work "done under special conditions," including that the claimant received special assistance, required special equipment, was allowed to work irregular hours or take frequent rest periods, and was permitted to work at a lower standard of

productivity or efficiency than other employees. 20 C.F.R. § 416.973(c). Relatively minor accommodations by an employer do not establish special conditions. *Katz*, 972 F.2d at 294. Rather, "[t]he critical inquiry is whether the special conditions have a significant impact on the value of the work performed." *Reeves v. Colvin*, 544 F.App'x 786, 788 (9th Cir. 2013).

Here, Plaintiff claims he worked only "3-4 hours a week in a sheltered environment." (Doc. 16 at 3); (AR 336). Plaintiff does not indicate he required special assistance or equipment, received special work arrangements from his employer, or worked at a lower productivity level than his coworkers because of his "head trauma." *See* 20 C.F.R. §§ 404.1572(c), 416.973(c). Plaintiff did not complain of cognitive-related difficulties with his work. Plaintiff testified only his back pain prevented him from doing "anything more than like an hour, hour and a half." (AR 55). Despite his back pain, Plaintiff indicates he was still able to engage in marketing, teach other agents "how to do real estate" and was able to make good money before the market crash. (AR 56). Plaintiff also states he regularly showed properties for his father and at some point, he sold two places to people he knew. (AR 57-58). Thus, the ALJ appropriately considered Plaintiff's past work to discount his head trauma testimony.

Fourth: Plaintiff argues "the court also disregard [*sic*] the opinion of several medical providers that are consistent with claimant's testimony as to his constant pain." (Doc. 16 at 6). Plaintiff fails to identify which opinions were "consistent" with his testimony as to constant pain, how they were allegedly consistent, and what error if any, the ALJ committed. *See generally* (Doc. 16). The Court will not consider matters that are not "specifically and distinctly" argued in Plaintiff's opening brief. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power. Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

Fifth: Plaintiff argues the ALJ failed to take into consideration that Plaintiff's constant pain, his need to regularly exercise, and his inability to focus and maintain concentration would put him off task at least 15% of the time, which would preclude him from any work. (Doc. 16 at 6-7) (citing AR 340-41)). The Court finds the ALJ applied proper legal standards and reached a conclusion supported by substantial evidence in determining that Plaintiff had an RFC to perform a range of light work with limitations, notwithstanding, and unlimited by, his alleged

predisposition to be off task at least 15% of the time. 42 U.S.C. §§ 405(g), 1383(c)(3).

In determining Plaintiff's RFC, the ALJ considered all of Plaintiff's symptoms in light of the medical and other evidence in the record, and prior administrative medical findings. (AR 25) (citing 20 CFR §§ 404.1520(c), 404.1529, 416.920(c), 416.929; SSR 16-3p). The ALJ acknowledged Plaintiff's testimony that he had difficulty focusing on tasks, an inability to pay attention for 30 minutes at a time, difficulty following long-spoken instructions, and needing to rest or take a nap for one hour a day. (AR 26) (citing AR 278-82, 283-94). However, the ALJ found "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 27).

The ALJ found objective findings on clinical examination were often within normal limits. *Id*. For example, Plaintiff possessed no sacroiliac joint tenderness, an unremarkable gait with no pain with weight bearing, and no use of an assistive device, and Plaintiff was found to have intact orientation and alertness. *Id*. The ALJ noted despite Plaintiff's subjective symptoms and difficulties he was able to engage in a wide range of daily activities. (AR 27-28). Further, the ALJ determined his ability to perform substantial gainful activity for 15 years indicated his pain and alleged mental impairments had not limited him to the extent he alleged. (AR 29).

Additionally, the ALJ determined there "was no medical opinion endorsing [Plaintiff's] alleged greater limitations." *Id*. Drs. Frye, Siekerkotte, and Mitchell provided no indication Plaintiff's condition would put him off task at least 15% of the time. *Id*. PA-C Irish's opinion on Plaintiff's limitations was fully considered by the ALJ and found not persuasive for a variety of reasons, including that her opinions were vague, not supported by adequate explanation, and appeared to have been gathered from statements made by Plaintiff and not based on independent assessment. (AR 29-30). Drs. Saxby, Bradley, and Leizer, assessed Plaintiff and found he had only mild difficulties concentrating, persisting, or maintaining pace. (AR 30). Dr. Williamson determined Plaintiff had only mild limitations "maintaining concentration, attention, persistence, and pace; maintaining regular attendance in a workplace and performing work activities on a consistent basis; and performing work activities without special or additional supervision." *Id*.

The ALJ also considered non-medical testimony from Plaintiff's mother. *Id*. Plaintiff's mother alleged Plaintiff "must perform stretching exercises for 30 to 60 minutes 4 to 5 times a day," that he is unable to focus on a given task, and his injuries cause constant pain and physical inability to walk more than 15 minutes at a time. (AR 340). The ALJ found Plaintiff's mother's opinion was inconsistent with the largely normal objective findings and did not support the extreme degree of limitation she had outlined. (AR. 30-31).

Thus, in light of the ALJ's thorough discussion of Plaintiff's RFC, the Court finds it should not disturb the ALJ's conclusion that Plaintiff could perform a range of light work with limitations, notwithstanding, and unlimited by, his alleged predisposition to be off task at least 15% of the time.

## V. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is ORDERED:

1. The decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
2. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security and close this case.

IT IS SO ORDERED.

Dated: **March 21, 2023**             _____
                                        UNITED STATES MAGISTRATE JUDGE